IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Delores Ann McFadden, | ) | Civil Action No.  8:14-cv-01727-TMC-JDA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| Carolyn W. Colvin, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Civil Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B).[1]  Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").[2] For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

**PROCEDURAL HISTORY**

On July 12, 2011, Plaintiff filed applications for DIB and SSI alleging disability beginning May 26, 2011.  [R. 212–20; 221–29.]  Plaintiff's claims were denied initially and upon reconsideration by the Social Security Administration ("the Administration").  [R.

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

[2] Section 1383(c)(3) provides, "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. § 1383(c)(3).

104–05; 126–27. ] Plaintiff requested a hearing before an administrative law judge ("ALJ") and on October 31, 2012, ALJ Rosanne P. Gudzan conducted de novo hearings on Plaintiff's claims via video. [R. 53–85.]

### ALJ Decision

The ALJ issued a decision on November 21, 2012, finding Plaintiff was disabled under sections 216(i) and 223(d) of the Social Security Act ("the Act"), from May 26, 2011, through September 11, 2012, with her disability effectively ending September 12, 2012. [R. 36–48.] At Step 1,[3] the ALJ found Plaintiff met the insured status requirements of the Act through June 30, 2014, and she had not engaged in substantial gainful activity since May 26, 2011, the date the claimant became disabled. [R. 41, Findings 1 & 2.] At Step 2, the ALJ found that, from May 26, 2011, through September 11, 2012, the period during which the claimant was under a disability, the Plaintiff had the following severe impairments: degenerative disc disease and scoliosis of the lumbar spine status-post Harrington rod placement and lumbar fusions from L2-5 . [R. 41, Finding 3.] The ALJ also found Plaintiff had been treated for a kidney disorder that was non-severe. [R. 41.] At Step 3, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled the criteria of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. 41, Finding 4.]   The ALJ specifically considered Listing 1.04. [*Id.*]

Before addressing Step 4, Plaintiff's ability to perform her past relevant work, the ALJ found Plaintiff retained the following residual functional capacity ("RFC"):

---

[3]The five-step sequential analysis used to evaluate disability claims is discussed in the Applicable Law section, *infra*.

> After careful consideration of the entire record, the undersigned finds that from May 26, 2011, through September 11, 2012, the claimant had the residual functional capacity to perform the demands of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with pushing/pulling 10 pounds occasionally and lesser amount frequently; occasionally climbing ramps and stairs, stooping and kneeling; but never being exposed to hazards such as unprotected heights and dangerous moving machinery. She required a sit/stand option at her workstation every 30 minutes. However, she was unable to maintain attention and concentration to perform these work tasks for even 2 hours at a time due to interruptions from pain.

[R. 41–42, Finding 5.]   Based on this RFC, at Step 4, the ALJ determined Plaintiff was unable to perform her past relevant work as a certified nursing assistant and cook from May 26, 2011, through September 11, 2012.  [R. 43, Finding 6.]  Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined that there were no jobs that existed in significant numbers in the national economy that the claimant could have performed from May 26, 2011, through September 11, 2012.  [R. 43, Finding 10.] Accordingly, the ALJ concluded Plaintiff was under a disability, as defined by the Social Security Act, from May 26, 2011, through September 11, 2012.  [R. 44, Finding 11.]

The ALJ went on to find that medical improvement occurred as of September 12, 2012, the date the claimant's disability ended, and that, since that date, she has not developed any new impairment(s).  [R. 45, Findings 12 and 13.]  The ALJ also found that the medical improvement resulted in an increase in the claimant's RFC.  [R. 45, Finding 14.]   The ALJ found Plaintiff retained the following RFC:

> After careful consideration of the entire record, the undersigned finds that, beginning September 12, 2012, the claimant had the residual functional capacity to perform the demands of sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) with pushing/pulling 10 pounds occasionally and lesser amount frequently; occasionally climbing ramps and

> stairs, stooping and kneeling; but never being exposed to hazards such as unprotected heights and dangerous moving machinery. She required a sit/stand option at her workstation every 30 minutes.

[R. 45, Finding 15.]

Considering Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy the claimant could have performed beginning September 12, 2012. [R. 47, Finding 19.] Thus, based on her application for DIB benefits, the ALJ found Plaintiff was disabled under sections 216(i) and 223(d) of the Act, from May 26, 2011, through September 11, 2012; and that her disability ended effective September 12, 2012. [R. 47.] Further, based on her application for SSI benefits, the ALJ found Plaintiff was disabled under § 1614(a)(3)(A) of the Act, from May 26, 2011, through September 11,2012 with her disability ending effective September 12, 2012. [*Id.*]

### Appeals Council Decision

Plaintiff requested Appeals Council review of the ALJ's decision and on January 27, 2014, the Appeals Council notified Plaintiff and her representative that her request for review had been granted that the Council proposed to issue a decision finding the Plaintiff not entitled to or eligible for benefits under the Act. [R. 4.] The Council also notified Plaintiff and her representative that it would consider any comments or new and material evidence submitted within 30 days from the date of the notice. [*Id.*] The Appeals Council's explained its reasoning as follows:

> The evidence of record fails to establish that the claimant became disabled at the alleged onset date. The hearing decision does not provide rationale with specific references to the evidence of record in support of finding this finding. While

4

the favorable period indicates that the claimant was incapable of maintaining attention and concentration for even 2-hour periods due to interruptions from pain, the claimant reported during that time that her pain was 0 out of 10 (Exhibit 7F, page 7). The hearing decision is not supported by substantial evidence.

A lumbar MRI of March 21, 2011, two months prior to the Established Onset Date, revealed moderate rotatory scoliosis with degenerative disc changes at L2-3, L3-4, and L4-5 levels unchanged in appearance without disc herniation, annular tear, or central or foraminal stenosis; L1-2 and L5-S1 and distal 3 thoracic disc show no abnormalities (Exhibit 5F, page 14). Physical examination that same month notes that the claimant presented as alert and oriented, in no acute distress, with normal gait and station, no tenderness to lumbar spine palpation except during range of motion stretch, no spasm, negative straight leg raise bilaterally, normal heel, toe, and tandem walk, and normal strength throughout the lower extremities, normal reflexes, and only decreased sensation to light touch and pinprick on the left L3 and L5 sensory dermatomes (Exhibit 12F, page 35). Cervical spine exam and lumbar spine exam were both generally normal (*Id.*, page 59).

On June 15, 2011, the claimant reported her subjective pain level at zero (no pain) out often, which she had also reported at her two previous appointments (Exhibit 7F, pages 7–9). The Appeals Council notes that this was fewer than 3 weeks after the Established Onset Date of disability as determined in the hearing decision.

On September 22, 2011, the claimant underwent lumbar spinal fusion surgery at L3-4 (Exhibit 8F, pages 13-15). Post-surgical follow up through May 9, 2012 consistently indicated that. . . pre-operative symptoms were improved, the claimant experienced good relief of radicular symptoms, the incision was healing well without signs of infection, and motor strength appeared to be 5/5 in all major muscle groups in the lower extremities (Exhibits 12F, pages 1-4; 13F, pages 1-4). The claimant's treating physician, Rakesh P. Chokshi, M.D. opined on December 5, 2011, that post-surgery, the claimant was unable to work until her next appointment (Exhibit 12F, page 3). At the next appointments, Dr. Chokshi provided no opinion as to her work ability, and continued to note improvement from pre-operative symptoms, good relief of radicular symptoms,

5

well healing incision, 5/5 lower extremities motor strength (Exhibits 13F and 14F).

The evidence of record does not support a finding that the claimant was experiencing difficulty maintaining attention and concentration, nor that she reported severe pain symptoms or medication side effects to her treating sources. Accordingly, the Appeals Council does not agree with the favorable portion of the hearing decision. The Appeals Council adopts the Administrative Law Judge's findings except that during the entire period at issue the claimant retained the residual functional capacity for a reduced range of sedentary work, as noted in Finding 15.

[R. 5–6.]

Based on her applications for DIB and SSI, the Appeals Council concluded that Plaintiff was not entitled to or eligible for a period of disability or DIB under §§ 216(i) and 223, respectively, or SSI payments under §§ 1602 and 1614(a)(3)(A) of the Act. [R. 7.] Plaintiff filed this action for judicial review on April 30, 2014. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ erred in finding that Plaintiff had the RFC to perform the cited sedentary jobs as of September 12, 2012. [Doc. 16 at 23–24.] Plaintiff also contends the Appeals Council's reversal of the ALJ's finding with respect to Plaintiff's RFC for the period of May 26, 2011, through September 11, 2012, is not supported by substantial evidence.[4] [Id. at 16–23.]

---

[4]Plaintiff also filed a Reply Brief in this case. [Doc. 19.] The Reply Brief, however, raises no new arguments not previously raised in Plaintiff's initial brief. [See Docs. 16, 19.] Thus, the Court will only refer to Plaintiff's initial brief.

6

The Commissioner, on the other hand, contends substantial evidence supports the Administrative Appeals Judge's RFC assessment and finding that Plaintiff was not disabled under the Act.  [*Id.* at 5–6.]

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)," not on the reviewing court. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the

7

Commissioner's decision).   Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *See Bird v. Comm'r*, 699 F.3d 337, 340 (4th Cir. 2012); *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse the Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Myers v. Califano*, 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).   Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'"  *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)).   Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose."  *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g).  *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision).   To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim.  *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was

8

appropriate where the ALJ failed to develop a full and fair record of the claimant's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the claimant disabled).    Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four is usually the proper course to allow the Commissioner to explain the basis for the decision or for additional investigation. *See Radford v. Comm'r*, 734 F.3d 288, 295 (4th Cir. 2013) (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *see also Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence).    On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand.").    After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction.    *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).    A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the

9

determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[5]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

---

[5]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence. *See, e.g.*, *Brooks v. Astrue*, No. 6:10-cv-152, 2010 WL 5478648, at *8 (D.S.C. Nov. 23, 2010); *Ashton v. Astrue*, No. TMD 09-1107, 2010 WL 3199345, at *3 (D. Md. Aug. 12, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

10

**APPLICABLE LAW**

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.    The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).  The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).  The claimant must prove disability on or before the last day of her insured status to receive disability benefits.  *Everett v. Sec'y of*

*Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969).  If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience.  *Grant*, 699 F.2d at 191.  If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, *id.* §§ 404.1572(b), 416.972(b).  If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity.  *Id.* §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities.  *See id.* §§ 404.1521, 416.921.  When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments.  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).  The ALJ must evaluate a disability claimant as a whole person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of

12

impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.[6]  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

---

[6]The Listing of Impairments is applicable to SSI claims pursuant to 20 C.F.R. §§ 416.911, 416.925.

13

claimant's residual functional capacity[7] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

### E.    *Other Work*

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g); *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[8]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform

---

[7]Residual functional capacity is "the most [a claimant] can still do despite [his] limitations."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. §§ 404.1569a(a), 416.969a(a).  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  20 C.F.R. §§ 404.1569a(c)(1), 416.969a(c)(1).

other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50 ("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.     Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

## III.    Treating Physicians

If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence, i.e., when the treating physician's opinion does not warrant controlling weight, *Craig*, 76 F.3d at 590, but the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion, 20 C.F.R. §§ 404.1527(c), 416.927(c). Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See Craig*, 76 F.3d at 590 (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983) (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition

16

for a prolonged period of time"); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways.  *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).  Further, the ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(d), 416.927(d).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the

17

pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig*, 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain." *Id.* (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the "pain rule" applicable within the United States Court of Appeals for the Fourth Circuit, it is well established that "subjective complaints of pain and physical discomfort could give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman v. Bowen*, 829 F.2d 514, 518 (4th Cir. 1987) (citing *Hicks v. Heckler*, 756 F.2d 1022, 1023 (4th Cir. 1985)).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. §§ 404.1528, 416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108 (4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all administrative law judges within the circuit a policy stating Fourth Circuit law on the subject of pain as a disabling

18

condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990). The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence. If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability. Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered. Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31,898-02, at 31,899 (Aug. 6, 1990). SSR 90-1p has since been superseded by SSR 96-7p, which is consistent with SSR 90-1p. *See* SSR 96-7p, 61 Fed. Reg. 34,483-01 (July 2, 1996). SSR 96-7p provides, "If an individual's statements about pain or other symptoms are not substantiated by the objective medical evidence, the adjudicator must consider all of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms." *Id.* at 34,485; *see also* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2) (outlining evaluation of pain).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Appeals Council Decision**

Plaintiff argues that substantial evidence does not exist to support the Administrative Appeals Judge's ("AAJ's") reversal of the ALJ's findings regarding Plaintiff's functional capacity for the period of May 16, 2011 through September 11, 2012.  [Doc. 16 at 16.] Specifically, Plaintiff contends the objective findings support Plaintiff's allegations of chronic pain to the level that it interfered with her ability to concentrate and maintain her attention to task [*id.* at 17–18]; that subjective medical evidence (Plaintiff's affidavit) provides clear and convincing evidence of severe limitations with attention and concentration due to pain

[*id.* at 20–21];  and, the ALJ was in the best position to judge Plaintiff's credibility with respect to her alleged limitations [*id.* at 21–23].

The Commissioner contends the AAJ's RFC assessment is supported by substantial evidence and that Plaintiff's challenge is unfounded. [Doc. 18 at 5.] The Commissioner contends the AAJs reached their RFC assessment based on the clinical findings.  [*Id.* at 6.]

### *Appeals Council's Standard of Review*

Pursuant to 20 C.F.R. § 404.979, "[t]he Appeals Council may affirm, modify or reverse the administrative law judge hearing decision or it may adopt, modify or reject a recommended decision. If the Appeals Council issues its own decision, it will base its decision on the preponderance of the evidence."  *See also*, 20 C.F.R. § 416.1467.  On review, the Appeals Council must "consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it which relates to the period on or before the date of the administrative law judge hearing decision."  20 C.F.R. §§ 404.976(b), 416.1476(b)(1).

In this case, the Appeals Council granted Plaintiff's request for review of the ALJ's decision and considered all of the evidence, including the Council's notice of proposed action and the additional evidence and arguments identified in the Supplemental List of Exhibits attached to its decision.  [R. 4, 8.]   The Appeals Council then characterizes its decision as one which "adopts the Administrative Law Judge's statements regarding the pertinent provisions of the Social Security Act, Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the

evidentiary facts, as applicable" but, "does not adopt the Administrative Law Judge's findings or conclusions regarding whether the claimant is disabled." [R. 5.]

### Brief Medical History

Plaintiff alleges disability due to lower back pain ("LBP"). [R. 86, 265.] Treatment notes from Live Oak Medical Center indicate Plaintiff presented on April 14, 2010 for LBP radiating down the left leg for about 2 months. [R. 324.] Plaintiff reported that she had surgery for scoliosis years ago but that, over the last two months, she was experiencing sharp pain radiating down her leg but no numbness, tingling, gait instability, falls, or bowel/bladder function problems. [*Id.*] Plaintiff's physical exam was normal with the exception of pain with palpation of the left lumbar paraspinal muscles. [R. 325.] Treatment notes indicated Plaintiff's lumbarsacral x-rays showed severe scoliosis and her symptoms sounded like a herniated disk even with normal exam. [R. 326.]

On May 3, 2010, Plaintiff presented to Pee Dee Orthopaedic for an initial examination based on her complaints of LBP. [R. 355.] Live Oak Medical Center treatment notes from May 5, 2010 indicated Plaintiff had started therapy after having been seen by Dr. Anthony Alexander ("Dr. Alexander") of Three Rivers Therapy two days prior. [R. 327, 339.] In his treatment notes, Dr. Alexander indicates that Plaintiff's chief complaints were LBP which reached a pain level of 9/10, which she experienced on a daily basis, some days worse than others. [R. 339.] Plaintiff reported she was told not to lift over five pounds; she had to roll out of bed at times secondary to LBP; and leaning over increased her LBP. [*Id.*] Plaintiff also reported that she had intermittent radicular pain which reached a pain level of 6/10 at worst. [*Id.*] Plaintiff's treatment plan indicated she was to meet with a therapist three times a week for 6 weeks and that her treatment would include

stabilization, flexibility, and strengthening; MH, e-stim, manual therapy; postural education; education in proper body mechanics; and education in a home exercise program. [R. 340.]

Treatment notes from Pee Dee Orthopaedic dated June 8, 2010 indicated Plaintiff underwent an MRI of the lumbosacral spine on May 21, 2010 and the results, as read by Dr. Alexander, revealed (1) lumbar scoliosis convex left centered a L4 with dextroscoliosis of the mid to low dorsal spine; (2) degenerative disc changes with asymmetric narrowing at the L3-4 level with associated bone marrow edema; and (3) metallic artifact arising from the soft tissues posterior of and right posterior of the L1 vertebral body comprising the exam. [R. 353.] On June 29, 2010, Plaintiff presented post-physical therapy and denied any pain or symptoms in her legs but complained of LBP since starting physical therapy. [R. 351.] Treatment notes from Pee Dee Orthopaedic indicate Plaintiff receive L5-S1 interlaminar epidural steroid injections to address her pain in July, August, October, and November 2010. [R. 349–50, 389–91.]

On February 14, 2011, Plaintiff returned to Dr. Alexander for revaluation of her LBP post-injection reporting that she longer had leg symptoms (such as left leg parestheasias [*see* R. 390]) but has significant LBP [R. 387]. Dr. Alexander diagnosed L4-5/L5-S1 radiculopathy. [*Id.*] On March 7, 2011, Plaintiff presented for an initial lumbar examination by Dr. Rakesh Chokshi ("Dr. Chokshi") of the Pee Dee Spine Center. [R. 384–86.] Plaintiff's chief complaint was back pain which was chronic, radiating, sharp pain, occasional back weakness, and very little symptoms in her legs. [R. 385.] Treatment notes indicated that, after physical therapy, medications, and four epidural injections, Plaintiff's pain continues to be an 8 out of 10. [*Id.*] On physical exam, Dr. Chokshi found Plaintiff's gait and station were normal; no tenderness on palpation of the spinal muscles; no soft

tissue triggers or muscle spasms; and a limited range of motion.  [*Id.*]  Plaintiff's straight leg raises were negative bilaterally; and her muscle strength was 5/5 in the hip flexors, quadricepts, hamstrings, gastrocnemius, anterior tibialis, and EHL.    [*Id.*]  Neurological sensory testing returned normal results bilaterally.    [R. 385–86.]    Upon reviewing radiographs, Dr. Chokshi noted discrased intervertebral disc space at L3-4; a review of Plaintiff's MRI from May 21, 2010 also showed L3-4 modic changes of degenerative disc disease.  [R. 386.]

Dr. Chokshi decided to get an MRI of the lumbar spine in a closed MRI facility to evaluate for stenosis and/or herniated nucleus pulposus and other disk/bone pathologies. [*Id.*]  On March 21, 2011, Plaintiff presented to Imagecare, LLC, for an MRI.  [R. 545.] Plaintiff returned to Dr. Chokshi on April 4, 2011, to obtain the results of the MRI which showed the previous scoliosis surgery and L3-4 degenerative disc disease, and also showed degenerative changes at L2-3, L3-4, and L4-5, with the changes at L3-4 being the worst.  [R. 383.]  Dr. Chokshi ordered physical therapy for stretching, strengthening and modalities of the lumbar spine, 2–3 days a week for 4 weeks; a back owner's manual was given to Plaintiff to assist with a home exercise program and a neck owner's manual was provided for education and simple exercises to be done at home.  [*Id.*]

In August 2011, Dr. Chokshi found Plaintiff was a candidate for surgery due to the failure of conservative treatment with pain and dysfunction sufficient to warrant surgery. [R. 472.]  Dr. Chokshi performed Plaintiff's spinal surgery by on September 27, 2011, for her degenerative disc disease at L3-4.  [R. 455–56.]  On October 17, 2011, Dr. Chokshi indicated Plaintiff was not able to return to work until her next appointment in two months. [R. 507.]  On December 5, 2011, Plaintiff returned to Dr. Chokshi for a post-operation

examination. [R. 503.]   Treatment notes indicate Plaintiff's post-operative symptoms improved with good relief of radicular symptoms.  [*Id.*]  Notes also indicate that motor strength was 5/5 in all major muscle groups in lower extremities, lumbar (AP and lateral) radiographs showed good positions of instrumentation and position of earlier fusion, and a brace and post-operative restrictions were discussed.  [*Id.*]

Plaintiff returned to Dr. Chokshi on February 6, 2012, for a post-operative examination.  [R. 572.]  Treatment notes indicated Plaintiff's symptoms had improved and she was having good relief of radicular symptoms.  [*Id.*]  Plaintiff's motor strength appeared to be 5/5/ in all major muscle groups in the lower extremities; the use of a brace was discussed; and physical therapy was ordered for stretching, strengthening and modalities of the lumbar spine.  [*Id.*]  Treatment notes indicated that post-operative restrictions were discussed [*id.*] but they are not detailed.  Plaintiff returned to Dr. Chokshi again on May 9, 2012, for a post-operative examination.  [R. 570.]  Treatment notes indicated Plaintiff was doing well as fare as back pain was concerned.  [*Id.*]  Treatment notes further indicated that post-operative restrictions were discussed [*id.*] but they were not detailed.  Plaintiff was seen again by Dr. Chokshi on September 12, 2012, for a post-operative examination.  [R. 574.] Treatment notes indicated that Plaintiff's symptoms had improved and that she had good relief of radicular symptoms.  [*Id.*]  Again, treatment notes indicated Plaintiff had 5/5 motor strength in all the major muscle groups in the lower extremities, the use of a brace was discussed, and post-operative restrictions were discussed [*id.*] by not detailed.

Treatment notes dated January 23, 2013, presented to the Appeals Council indicated Plaintiff returned to Dr. Chokshi having problems with low back pain and left sided leg pain, occasional bilateral tingling, and numbness in the legs post-surgery.  [R. 578.]

Plaintiff further complained of neck pain with left upper extremity tingling, numbness, and weakness; she also had degenerative changes in her neck in the cervical C5-6 and C6-7. [*Id.*]  A subsequent MRI was conducted on January 28, 2013.  [R. 592.]  On February 18, 2013, Dr. Chokshi indicated Plaintiff could return to work but was restricted to no lifting/carrying over 15 pounds and no repetitive bending. [R. 594.]

### *ALJ and Appeals Council Decisions*

In her decision November 2012 decision, the ALJ concluded that from May 26, 2011, through September 11, 2012, the Plaintiff's RFC, determining she was unable to maintain attention and concentration to perform work tasks for even two hours at a time due to interruptions from pain, precluded Plaintiff from doing her past relevant work and precluded her from doing any jobs in that national economy.  [*See* R. 41–44.]  The ALJ explained that she gave weight to Dr. Chokshi's December 2011 opinion that Plaintiff should remain out of work until further notice.  [R. 43.]  The ALJ also took into consideration Plaintiff's testimony that she takes pain medication 1–2 times a month and has difficulty concentrating about two days a week.  [R. 45.]  After September 12, 2012, however, the ALJ found that Plaintiff was capable fo performing sedentary work with certain limitations. [R. 45.]  The ALJ noted that Plaintiff was released by her spine surgeon on September 12, 2012, with no assigned lifting limitations and that the evidence of her recovery was inconsistent with a level of severity that would preclude her from sustaining all work activity. [R. 46.]

Upon review of the ALJ's decision by the Appeals Council, the AAJ found that the "hearing decision does not provide rationale with specific references to the evidence of record in support of . . . this finding."  [R. 5.]  Specifically, the AAJ noted that "[w]hile the

favorable period indicates that the claimant was incapable of maintaining attention and concentration for even 2-hour periods due to interruptions from pain, the claimant reported during that time that her pain was 0 out of 10.  The hearing decision is not supported by substantial evidence." [*Id.* (citation omitted).]  The AAJ explained that "[t]he evidence of record does not support a finding that the claimant was experiencing difficulty maintaining attention and concentration, nor that she reported severe pain symptoms or medication side effects to her treating sources."  [R. 6.]  Consequently, the AAJ adopted the ALJ's "findings except that during the entire period at issue the claimant retained the residual functional capacity for a reduced range of sedentary work, as noted in Finding 15." [*Id.*]

### *Discussion*

Plaintiff challenges the AAJ's finding with respect to Plaintiff's RFC for the period of May 26, 2011, through September 11, 2012, and challenges the ALJ's credibility finding with respect to Plaintiff's allegation that she needs to be in a reclined about four hours each day.  Plaintiff argues that objective medical evidence of Plaintiff's pain resulting in limitations, as well as subjective evidence of pain provided by way of Plaintiff's testimony combine to provide clear and convincing evidence of severe limitations with attention and concentration to preclude sedentary work.  [Doc. 16 at 17–20.]  Plaintiff also argues that the AAJ should have given deference to the ALJ's decision based on her ability to observe Plaintiff's credibility and demeanor. [*Id.* at 21–23.]

The Administration has provided a definition of RFC and explained what an RFC assessment accomplishes:

> RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s),

> including any related symptoms, such as pain, may cause
> physical or mental limitations or restrictions that may affect his
> or her capacity to do work related physical and mental
> activities. Ordinarily, RFC is the individual's maximum
> remaining ability to do sustained work activities in an ordinary
> work setting on a regular and continuing basis, and the RFC
> assessment must include a discussion of the individual's
> abilities on that basis. A "regular and continuing basis" means
> 8 hours a day, for 5 days a week, or an equivalent work
> schedule . . . .

SSR 96–8p, 61 Fed.Reg. 34,474–01, at 34,475 (July 2, 1996) (internal citation and

footnotes omitted). The RFC assessment must first identify the claimant's functional

limitations or restrictions and assess his or her work-related abilities on a

function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20

C.F.R. §§ 404.1545 and 416.945. *See id.* Only after this identification and assessment

may RFC be expressed in terms of the exertional levels of work: sedentary, light, medium,

heavy, and very heavy. *Id.* Additionally, the Administration has determined that in assessing

RFC, the ALJ

> must consider only limitations and restrictions attributable to
> medically determinable impairments. It is incorrect to find that
> [a claimant] has limitations or restrictions beyond those caused
> by his or her medical impairment(s) including any related
> symptoms, such as pain, due to factors such as age or height,
> or whether the [claimant] had ever engaged in certain activities
> in his or her past relevant work (e.g., lifting heavy weights.)
> Age and body habitus (i .e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC  . . . .

*Id.* at 34,476.

To assess Plaintiff's RFC, the ALJ must consider all relevant evidence in the record,

including medical history, medical signs, laboratory findings, lay evidence, and medical

28

source statements. Thus, an ALJ's RFC assessment will necessarily entail assessing the credibility of any alleged limitations, including assessing the credibility of testimony offered by the claimant.

Upon review, the Court finds the decision of the AAJ finding Plaintiff not disabled during the period of May 26, 2011, through September 11, 2012, is supported by substantial evidence in the case record. *See Laws*, 368 F.2d 640 (finding that substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion"). As an initial matter, the ALJ failed to cite to any evidence of record to support her finding that Plaintiff could not concentrate or maintain attention for even two hours due to pain. [*See* R. 42–43.] Further, Plaintiff has failed to direct the Court to any evidence in Plaintiff's treatment notes where limitations in Plaintiff's attention and concentration due to pain are noted. Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5), pursuant to the Regulations formulated by the Commissioner, the Plaintiff has the burden of proving disability. See 20 C.F.R. § 404.1505(a); *Blalock*, 483 F.2d at 775.

Moreover, certain treatment notes during two months of the period in question, between May and June 2011, indicate Plaintiff's pain level was a zero or minimal. [*See e.g.*, R. 413 (pain level after treatment was 0); R. 407 (pain level before and after treatment was 0); R. 408 (pain level before treatment was 0; after treatment was a 2); R. 409 (pain level before treatment was a 2); R. 410 (pain level after treatment was a 2); R. 411 (pain level before treatment was a 0 in the back and 6 in the trapezius (neck area)); R. 412 (pain level before treatment at a 3); R. 413 (pain described as "just a little" at level 6 before treatment and at a 0 at the end of treatment).] Treatment notes from November 2012 and January 2013 indicate that Plaintiff complained of neck pain and on examination showed mild pain

to ROM; and on psychiatric exam, Plaintiff was alert; oriented to time, place, person; and had no difficulty with speech or language. [R. 581, 584.] Further, Plaintiff testified she only takes one to two pain tables in a month for pain because they make her nauseous and sick. [R. 71.] Plaintiff also testified that her problems with focusing and concentration are evidenced by her "trying to figure out what [she has] to do." [R. 72.] Plaintiff explained that, "I've got something I've got to do, and I try to figure out what I had to do." [*Id.*]

A plain reading of the Appeals Council's decision reflects the thorough review and consideration given by it to the entire record and to the evidence, findings, and conclusions enumerated in the ALJ's decision. Plaintiff failed to address any error in the AAJ's reasoning. Accordingly, the Court finds the Appeals Council's modification of the ALJ's RFC finding is based on the preponderance of the evidence in the record, and is supported by substantial evidence in the record.

**ALJ's Credibility Determination**

With respect to the ALJ's finding that Plaintiff was not disabled after September 11, 2012, and possessed the RFC to perform sedentary work, Plaintiff attacks the ALJ's credibility finding with respect to her alleged need to be in a reclined position for up to four hours a day. Specifically, Plaintiff contends the ALJ failed to consider that Plaintiff required periods of rest in a reclined position of up to four hours per day due to her chronic back pain. [Doc. 16 at 23.]

The RFC determination must incorporate not only impairments supported by objective medical evidence, but also those impairments based on credible complaints made by the claimant. The ALJ uses a two-step analysis in evaluating a claimant's subjective complaints. *Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). First, the ALJ must

30

determine whether there is an underlying medically determinable impairment that could reasonably produce the claimant's pain or symptoms. *Id.* If the underlying impairment could reasonably be expected to produce the claimant's pain, the ALJ must then evaluate the claimant's statements about the intensity and persistence of the pain, as well as the extent to which it affects the individual's ability to work. *Id.* at 595. The ALJ's evaluation must take into account all available evidence, including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the claimant's subjective statements. *Id.* at 595–96. Social Security Ruling 96–7p states that the evaluation of a plaintiff's subjective complaints must be based on the consideration of all the evidence in the record, including, but not limited to: (1) medical and laboratory findings, (2) diagnoses and medical opinions provided by treating or examining physicians and other medical sources; (3) statements from both the individual and treating or examining physicians about the claimant's medical history, treatment, response, prior work record, and the alleged symptoms' effect on the ability to work.

In considering Plaintiff's subjective allegations regarding her limitations, the ALJ followed the two step process outlined in *Craig* and concluded that, while Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not credible beginning September 12, 2012. [R. 45.] The ALJ explained as follows:

> In terms of the claimant's back problems, as noted above, the evidence documents that she was released by her spine surgeon on September 12,2012, with instructions to return on

31

> an as-needed basis. She was not assigned any lifting limitations. While she testified that she continues to experience back pain, she only takes pain medications 1-2 times a month due to the side effects. The claimant testified to cooking, shopping one time a month, and attending church. The undersigned has considered the claimant's allegations of ongoing back pain in assessing the residual functional capacity for the limited range of sedentary work described above. However, the evidence of her recovery from her fusion and release by her treating orthopedist as of September 12, 2012, is inconsistent with a level of severity that would preclude the claimant from sustaining all work activity.

[R. 46.] The ALJ also cited Dr. Chokshi's treatment notes which indicated that Plaintiff "had good relief of her preoperative symptoms with 5/5 strength in her lower extremities. As she only uses pain medications 1-2 times a month, a restriction to no hazards such as unprotected heights and dangerous moving machinery is sufficient." [*Id.*] In formulating her RFC, the ALJ gave Plaintiff the benefit of the doubt regarding her reports that her pain increased by standing for long periods, sitting, walking, squatting, reaching, and bending although he found these claims inconsistent with the record evidence. [*Id.*] The ALJ, nevertheless, limited the amount Plaintiff can sit, stand, walk, lift, carry, push, pull, climb, stoop, kneel, balance, crouch, crawl, and be exposed to hazards. [*Id.*] Additionally, the ALJ discounted Plaintiff's allegation that she could not work due to an inability to sit for long periods and a need to lie down during the day as the evidence of her good recovery from her fusion did not support the need to lie down during the day. [*Id.*] Nevertheless, the ALJ crafted the RFC to allow Plaintiff a sit/stand option at her workstation every 30 minutes. [*Id.*]

The Court also notes that Plaintiff testified that, when she's at home, she is laying down in the recliner with the chair back and her feet up and a pillow behind her back for

"[p]robably two or three hours sometimes" and "sometimes . . . probably about four hours"; or if she sits in a chair in the house or rides in the car, she puts a pillow behind her back to be comfortable. [R. 67.] Plaintiff also testified that, when she goes to church, she takes a pillow to put behind her back and, when she's tired of sitting, will step out into the hallway for a minute and then come back. [R. 75.]

In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig*, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Accordingly, based on a review of the ALJ's decision and the record evidence, the Court finds the ALJ's credibility determination is supported by substantial evidence and that the ALJ adequately explained her consideration of the evidence regarding Plaintiff's alleged need to lie down during the day.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends the Commissioner's decision be AFFIRMED.

**IT IS SO RECOMMENDED**.

S/Jacquelyn D. Austin
United States Magistrate Judge

July 29, 2015
Greenville, South Carolina